## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF ST. PETERSBURG, FLORIDA, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| TEVA PHARMACEUTICAL INDUSTRIES LTD., KÅRE SCHULTZ, and MICHAEL MCCLELLAN, | ) ) ) ) |
| | ) |
| Defendants. | ) ) |

**CIVIL ACTION NO.**

**COMPLAINT--CLASS ACTION**

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

**<u>JURY TRIAL DEMANDED</u>**

By and through its undersigned counsel, Plaintiff Employees' Retirement System of the City of St. Petersburg, Florida ("Plaintiff") alleges the following against Teva Pharmaceutical Industries Ltd. ("Teva" or the "Company") and certain of the Company's executive officers (the "Individual Defendants").  Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation:  (a) review and analysis of public filings made by Teva and other related parties and non-parties with the Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Teva and other related parties and non-parties; (c) review of news articles, shareholder communications, conference call transcripts, and postings on Teva's website concerning the Company's public statements; (d) review and analysis of other court filings related to Teva, including the civil antitrust enforcement action pending in this District brought by a coalition of 44 states against Teva and over a dozen other generic drug companies, captioned *The State of Connecticut, et al. v.*

1

*Teva Pharmaceuticals USA, Inc.*, *et al.*, No. 2:19-cv-02407 (E.D. Pa.); and (e) review of other publicly available information concerning Teva and the Individual Defendants.

## I.   NATURE OF THE ACTION

1.     This is a federal securities class action against Teva and certain of its executive officers for violations of the federal securities laws.  Plaintiff brings this action on behalf of all persons or entities who purchased or otherwise acquired shares of Teva American Depositary Shares ("ADS") between August 4, 2017 and May 10, 2019, inclusive (the "Class Period"), seeking to pursue remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  The Exchange Act claims allege that Defendants engaged in a fraudulent scheme to artificially inflate the Company's share price.  As a result of the fraud, the Company has lost a substantial portion of its value and its investors have incurred substantial losses.

2.     Teva is the largest generic drug manufacturer in the world.  This case arises from Teva's consistent denials during the Class Period of having engaged in any anticompetitive practices, including colluding and conspiring with competitors in the U.S. generic drug industry to allocate market share and to raise, fix, and maintain the prices of over 100 generic drugs.

3.     Founded in 1901 and headquartered in Israel, Teva develops, manufactures, markets, and distributes generic drugs.  Since at least 2014, the generic drug industry has fallen under increased public scrutiny, triggering Congressional hearings, calls for drug pricing legislation, and prosecutorial investigations.  The first such investigation was initiated by the Attorney General of Connecticut in July 2014.  Shortly thereafter, in October 2014, the United States Congress began its own probe into skyrocketing prices in the generic drug industry, and in November 2014, the United States Department of Justice's ("DOJ") Antitrust Division launched a similar investigation.

4.      Investors first learned of Teva's potential involvement in anticompetitive conduct on August 4, 2016, when Teva disclosed that its U.S. subsidiary, Teva Pharmaceuticals USA, Inc. ("Teva USA"), had received a subpoena from the DOJ's Antitrust Division relating to the marketing and pricing of certain of Teva's generic drugs and related communications with its competitors.  Teva also disclosed on August 4, 2016, that approximately one month prior, Teva USA had received a subpoena from the Connecticut Attorney General relating to potential state antitrust law violations.

5.      Since August 2016, Teva has remained the subject of intense scrutiny concerning the Company's alleged involvement in a vast industry-wide price-fixing scheme.  For example, in December 2016, twenty State Attorneys General filed their first antitrust complaint against six companies, including Teva, for conspiring to raise, fix, and maintain the prices of two generic drugs.  The complaint was later amended to assert antitrust violations against Teva regarding seven drugs.  Beginning in March 2016, several consumer class action lawsuits were filed against Teva and other generic drug makers alleging federal antitrust claims and violations of state law on behalf of those that purchased Teva's generic drugs at supra-competitive prices.  In April 2017, these actions were transferred to the generic drug multidistrict litigation ("MDL") proceeding in this District.  In addition to the class action litigation, several large purchasers of Teva generic drugs such as insurance companies Humana and United HealthCare Services have filed direct actions alleging antitrust violations against Teva.

6.      In the face of these widespread assertions of anticompetitive conduct, Teva consistently maintained its innocence, denying any involvement in anticompetitive conduct.  In each of the Company's annual and quarterly reports publicly filed with the SEC during the Class

Period, Teva affirmed that it "denies having engaged in any conduct that would give rise to liability" in the various antitrust proceedings and investigations that enveloped the Company.

7.      Teva issued similar steadfast denials in media reports published throughout the Class Period.  For example, in October 2017, after the State Attorneys General filed a proposed amendment expanding their first antitrust complaint, a Teva spokeswoman stated to *Courthouse News* that the Company "denie[d]" allegations of misconduct and that Teva would "continue to defend itself vigorously in court."   In December 2018, Teva again denied engaging in any anticompetitive practices, stating in a *Business Insider* article that it denied the antitrust allegations and "will continue to vigorously defend itself."   In January 2019, after being sued for antitrust violations by United HealthCare Services, Teva again denied wrongdoing and assured investors that "Litigation surrounding U.S. generic pricing of several companies, including Teva, continues to be the subject of inaccurate media stories."

8.      The market credited Teva's public denials.   For example, in June 2018, analysts at Wells Fargo stated after a meeting with the Company's senior management, "[a]s for the price collusion allegations, Teva does not think that it did anything wrong." Wells Fargo's report noted that Teva's CEO was "forthright and sharp when discussing the issues and answering our questions."   Evercore ISI stated in December 2018 that "we know several large generics manufacturers don't feel there is solid evidence [of price-fixing]."   Recently, on May 2, 2019, analysts at Credit Suisse issued a report noting that the Company's management emphasized that "internal reviews have not demonstrated any collusion."

9.      Teva's public denials were materially false and misleading.   Unbeknownst to investors during the Class Period, Teva was not only extensively involved, but the central participant, in a massive price-fixing scheme in the generic drug industry.  The full extent of Teva's

years-long lies and extensive involvement in the price-fixing conspiracy was not fully revealed until May 10, 2019, when a coalition of 44 states filed a massive, 524-page complaint detailing how Teva was a central and "consistent participant" in a conspiracy among nearly twenty pharmaceutical companies to allocate market share and raise, fix, and maintain the prices of hundreds of generic drugs.

10.     The scope and extent of Teva's collusive practices and liability exposure is far greater than previously understood.  While the initial complaint filed by the State Attorneys General alleges price collusion and undisclosed price hikes for 7 drugs, their new May 2019 complaint details Teva's collusion with competitors for upwards of 86 drugs and implementing significant undisclosed price hikes on 112 drugs.  Products named in the May 2019 State Attorneys General complaint run the pharmaceutical gamut, from treatments for basic infections, diabetes, cancer, epilepsy, multiple sclerosis, HIV and ADHD, to antidepressants, contraceptives and anti-inflammatory medications.  The new State Attorneys General complaint contains substantial and previously undisclosed evidence directly implicating Teva as a central player in the anticompetitive scheme, including emails, text messages, confidential witness statements, and statements made in phone calls and in-person meetings.  Moreover, multiple Teva executives have been personally named as defendants.  Discussing the new civil enforcement action lawsuit during a May 12, 2019, broadcast of the national television news program *60 Minutes*, Connecticut AG William Tong characterized the conspiracy as "the biggest corporate cartel in history and probably the biggest antitrust price-fixing case in this country, certainly right now and maybe in our nation's history."

11.     As a result of the new information disclosed in the May 2019 State Attorneys General complaint, the price of Teva ADS declined by nearly 15%, falling from a closing price of $14.36 per share on May 10, 2019, to $12.23 per share on May 13, 2019.

12.     Due to the Defendants' wrongful acts, false and misleading statements and omissions, and the sharp decline in the market value of the Company's ADS during the Class Period, Plaintiff and other Class members have suffered significant losses and damages. Through this action, Plaintiff asserts claims under the Exchange Act to recover the significant damages that Plaintiff and other Class members have suffered as a result of Defendants' misconduct.

## II.     **JURISDICTION AND VENUE**

13.     This action arises under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

15.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). Many of the acts and conduct complained of herein, including the preparation and dissemination of materially false and misleading information to the investing public, occurred in substantial part in this District.

16.     In connection with the acts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

III.    **PARTIES**

A.    **Plaintiff**

17.    Plaintiff Employees' Retirement System of the City of St. Petersburg, Florida, as set forth in the accompanying certification and incorporated by reference herein, purchased Teva ADS at artificially inflated prices during the Class Period and was damaged thereby.

B.    **Defendants**

18.    Defendant Teva Pharmaceutical Industries Ltd. is a generic and specialty pharmaceutical company incorporated in Israel.  Teva's U.S. subsidiary, Teva Pharmaceuticals USA, Inc., is incorporated in Delaware and, at all times relevant to the Complaint, maintained its executive offices at 1090 Horsham Road, North Wales, Pennsylvania.  Teva ADS are listed on the New York Stock Exchange ("NYSE") under the ticker "TEVA."

19.    Defendant Kåre Schultz ("Schultz") has served as the President and Chief Executive Office of Teva since November 1, 2017.  Schultz has also served on the Company's Board of Directors since November 1, 2017.

20.    Defendant Michael McClellan ("McClellan") has served as Executive Vice President and Chief Financial Officer ("CFO") of Teva since November 2017.  Prior to serving in that role, McClellan served as Teva's Interim Group CFO from July 2017 to November 2017 and Senior Vice President and CFO, Global Specialty Medicines from 2015 to November 2017.

21.    Defendants Schultz and McClellan are collectively referred to as the "Individual Defendants," and together with the Company, as the "Defendants."

22.    During the Class Period, the Individual Defendants, as senior executive officers of Teva, were privy to confidential, proprietary and material adverse non-public information concerning Teva, its operations, finances, financial condition and present and future business

prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

23.     The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Teva's business.

24.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and, through such analysts, to the investing public. The Individual Defendants were provided with copies of the Company's reports and publicly disseminated documents alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

25.     As senior executive officers and/or directors and as controlling persons of a publicly traded company whose ADS and other securities were, and are, registered with the SEC pursuant to the Exchange Act, and are traded on the NYSE and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful

information with respect to Teva's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so the market price of Teva's ADS would be based on truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

26.     The Individual Defendants are liable as participants in a scheme and course of business that operated as a fraud or deceit on purchasers of Teva's publicly traded ADS by disseminating materially false and misleading statements and/or concealing material adverse facts.

## IV.   SUBSTANTIVE ALLEGATIONS

### A.     Company Background

27.     Teva is a global pharmaceutical company and the world's largest generic drug manufacturer.  Headquartered in Israel, Teva operates worldwide, with a significant presence in the United States, Europe, and other markets. Teva's business is comprised of two reporting segments--specialty and generic medicines.  Teva's generic business accounts for approximately 50% of the Company's overall revenues, with roughly half of those generic drug sales in the United States.

28.     For the last several years, Teva has been implicated in a widespread price-fixing scheme and unlawful collusive activity in the U.S. generic drug market.  Teva has consistently maintained its innocence, representing to investors that the Company never engaged in "any conduct that would give rise to liability" for antitrust violations.  Defendants' denials are contained in each of the Company's annual and quarterly reports filed with the SEC during the Class Period,

and in statements made to the media in response to reports about the price-fixing conspiracy and other collusive misconduct.

### B.   Defendants' False and Misleading Statements and Material Omissions

29.     Throughout the Class Period, Defendants repeatedly made false and misleading statements and/or failed to disclose material adverse facts regarding Teva's anticompetitive practices and involvement in the anticompetitive scheme, which maintained artificial inflation in the Company's ADS prices and, when revealed, caused the share prices to fall.

30.     On August 3, 2017, Teva filed its current report for the month of August 2017 on Form 6-K with the SEC.  In the Form 6-K, Teva described the various antitrust matters it faced, including: (i) subpoenas from the DOJ's Antitrust Division and Connecticut Attorney General; (ii) a December 2016 lawsuit filed by a coalition of State Attorneys General accusing Teva of antitrust violations for price-fixing regarding seven generic drugs; and (iii) private antitrust ligation arising out of the price-fixing conspiracy.  The Form 6-K represented that *"Teva denies having engaged in any conduct that would give rise to liability with respect to the above-mentioned subpoenas and civil suits."*

31.     The false and misleading statement above, or a materially identical variation, was contained in each of Teva's periodic reports filed with the SEC during the Class Period, including: Teva's current report on Form 6-K filed on November 2, 2017; Teva's annual report on Form 10-K for the year ended December 31, 2017, filed on February 12, 2018; Teva's quarterly report on Form 10-Q for the period ended March 31, 2018, filed on May 3, 2018; Teva's quarterly report on Form 10-Q for the period ended June 30, 2018, filed on August 2, 2018; Teva's quarterly report on Form 10-Q for the period ended September 30, 2018, filed on November 1, 2018; and Teva's annual report on Form 10-K for the year ended December 31, 2018, filed on February 19, 2019.

32.     In addition, each of the reports filed with the SEC on Forms 10-Q and 10-K throughout the Class Period contained certifications pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 ("SOX Certifications") signed by Defendants Schultz and McClellan, stating that the "report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

33.     On October 31, 2017, in response to media reports issued after the State Attorneys General filed a proposed amendment expanding their first antitrust complaint, a Teva spokeswoman stated to *Courthouse News* that ***"Teva denies these allegations and will continue to defend itself vigorously in court."*** The Company further stated that ***"[i]n accordance with our values, Teva is committed to complying with all applicable competition laws and regulations. To this end, we have a robust compliance program designed to ensure that our employees are aware of competition laws, regulations and internal policies, and their obligations to abide by them."***

34.     The aforementioned statements were false and misleading when made because Defendants misrepresented and failed to disclose adverse facts, which were known to Defendants or recklessly disregarded by them, including: (i) contrary to its public denials, Teva had in fact engaged in a vast, industry-wide price-fixing scheme and other unlawful collusive misconduct since at least 2012; (ii) Teva was not just a participant, but the company at the heart of the anticompetitive scheme, implementing price increases on approximately 112 generic drugs and colluding with competitors regarding at least 86 different generic drugs; and (iii) several Teva employees had such deep involvement in the conspiracy that they were named personally as defendants in the May 2019 State Attorneys General civil enforcement action.

C.     **The Truth Begins to Emerge**

35.     The truth about Teva began to be revealed to investors on December 9, 2018, when *The Washington Post* published an exposé regarding the price-fixing conspiracy.  The article quoted comments by Joseph Nielsen ("Nielsen"), an Assistant Attorney General for the State of Connecticut who has been leading the State Attorneys General investigation, concerning how the scope of the investigation was far larger than initially reported.  Specifically, Nielsen revealed that the scope of the investigation had expanded to at least 16 companies and 300 drugs, and had exposed "the largest cartel in the history of the United States."  According to *The Washington Post* exposé, Teva continued to deny engaging in any anticompetitive conduct and represented in a court filing that allegations of a price-fixing conspiracy "are entirely conclusory and devoid of any facts."

36.     On this news, the price of Teva ADS fell $0.97 per share, from $19.41 per share on December 7, 2018 (the last trading day before the announcement), to $18.44 per share on December 10, 2018, a decline of 5%.

37.     Teva continued to issue further denials of any anticompetitive conduct.   On December 19, 2018, in response to media reports discussing the State Attorneys General's action, Teva issued a statement to *Business Insider* that it denied the allegations and *"will continue to vigorously defend itself."*  Similarly, on January 18, 2019, in response to media reports discussing a lawsuit filed by health insurance company United HealthCare Services against Teva arising out of the price-fixing conspiracy, the Company stated to *Law360*: "Overall, we establish prices to enable patient access, maintain our commitment to innovative and generic medicines and fulfill obligations to shareholders."  The Company added that it is *"committed to complying with all applicable laws and regulations and is dedicated to conducting business with integrity and*

*fairness. Litigation surrounding U.S. generic pricing of several companies, including Teva, continues to be the subject of inaccurate media stories.*" On February 19, 2019, in response to media reports discussing an unredacted version of the first State Attorneys General complaint that was made public, Teva stated to *Bloomberg* that it would *"vigorously defend itself against these unfounded allegations."*

38.     On May 10, 2019, after the close of the U.S. financial markets, 44 State Attorneys General filed a 524-page antitrust complaint revealing previously undisclosed facts regarding Teva's participation in the generic drug price-fixing conspiracy. The complaint detailed Teva's price-fixing with regards to at least 86 different generic drugs, compared to just 7 drugs in the previously filed action. The complaint further asserts that the Company implemented significant price increases for approximately 112 generic drugs, including extraordinary price hikes of over 1,000%. The action details Teva's role as a "consistent participant" and a central player in the conspiracy. Further, the civil enforcement action names four Teva employees personally as defendants, including Maureen Cavanaugh, Teva's former Senior Vice President and Chief Commercial Officer, North America; Kevin Green, Teva's former Director of National Accounts; Nisha Patel, Teva's former Director of Strategic Customer Market and Director of National Accounts; and David Rekenthaler, Teva's former Vice President, Sales U.S. Generics. Previously, no Teva employees were named as defendants.

39.     On this news, Teva's ADS declined, falling from a closing price of $14.36 per share on May 10, 2019, to close at $12.23 per share on May 13, 2019, a decline of approximately 15%.

40.     Securities analysts were surprised by the May 10, 2019 revelations. For example, analysts at Bernstein warned in a note to investors "the price-fixing lawsuit is worse than we expected" and "there seem to be specific cases in the lawsuit that are going to be hard to explain

away."  Analysts at J.P. Morgan stated that "[w]e were open to the majority of price spikes being 'explainable' by way of shortages, limited competition (only two or three competitors), and price 'signaling,' a grey area of antitrust law.  So we were sorely disappointed by the nature of the direct quotes attributed to Teva employees in the expanded complaint."

41.     Due to the Defendants' wrongful course of conduct, Plaintiff and other Class members have lost billions of dollars on their investments in Teva shares.

## V.   <u>UNDISCLOSED ADVERSE INFORMATION</u>

42.     The market for Teva's ADS was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and misleading statements and failures to disclose described herein, Teva's ADS traded at artificially inflated prices during the Class Period. Plaintiff and the other members of the Class purchased or otherwise acquired Teva's ADS relying upon the integrity of the market price of Teva's shares and market information related to Teva and have been damaged thereby.

43.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Teva's ADS, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Such statements and omissions were materially false and misleading in that they failed to disclose material adverse non-public information and misrepresented the truth about the Company, its business and operations, as alleged herein.

44.     At all relevant times, the material misrepresentations and omissions particularized herein directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class.  As described herein, during the Class

Period, Defendants made or caused to be made a series of materially false and misleading statements about Teva's business, prospects and operations.

45. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Teva and its business, prospects and operations, thus causing the Company's ADS to be overvalued and artificially inflated at all relevant times. Defendants' false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## VI.     NO SAFE HARBOR

46. The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded herein. Furthermore, many of the statements pleaded herein were not identified as "forward-looking statements" when made, or indicated that actual results "could differ materially from those projected." Nor were there any meaningful cautionary statements identifying important factors that could cause actual results to differ materially from the statements made therein.

47. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Teva who knew that those statements were false when made.

## VII.   **SCIENTER ALLEGATIONS**

48.     As alleged herein, the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

49.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Teva, their control over, receipt and/or modification of Teva's allegedly materially misleading statements and omissions, and/or their positions with the Company which made them privy to confidential information concerning Teva, participated in the fraudulent scheme alleged herein.

50.     The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

## VIII.   **LOSS CAUSATION**

51.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Teva's ADS and operated as a fraud or deceit on Class Period purchasers of Teva's ADS by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information.   When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Teva's ADS fell significantly as the prior inflation came out of the Company's share price.   As a result of their purchases of Teva's

securities during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.,* damages, under the federal securities law.

52.     By failing to disclose the true state of the Company's business, prospects and operations, investors were not aware of the true state of the Company's financial status.  Therefore, Defendants presented a misleading picture of Teva's business and prospects.  Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused Teva to conceal the truth.

53.     Defendants' false and misleading statements caused Teva's ADS to trade at artificially inflated levels throughout the Class Period.  However, as a direct result of the Company's problems coming to light, Teva's share price fell precipitously from its Class Period high.  The ADS price drop discussed herein caused real economic loss to investors who purchased the Company's ADS during the Class Period.

54.     The decline in the price of Teva's ADS after the truth came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of Teva's share price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct.  The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Teva's ADS and the subsequent decline in the value of Teva's ADS when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

IX.    **PLAINTIFF'S RELIANCE**

55.    During the Class Period, Plaintiff relied on the materially false and misleading statements alleged herein when purchasing Teva ADS.

56.    There is a presumption of reliance established by the fraud-on-the-market doctrine in this case because, among other things:

(a)    Teva ADS met the requirements for listing, and were listed and actively traded on, the NYSE, a highly efficient market;

(b)    As a regulated issuer, Teva filed periodic public reports with the SEC and NYSE;

(c)    Teva securities were followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace; and

(d)    Teva regularly issued press releases which were carried by national newswires. Each of these releases was publicly available and entered the public marketplace.

57.    As a result, the market for Teva ADS promptly digested current information with respect to the Company from all publicly available sources and reflected such information in Teva's share price.  Under these circumstances, all purchasers of Teva ADS during the Class Period suffered similar injury through their purchase of shares at artificially inflated prices and a presumption of reliance applies.

58.    Plaintiff is also entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are also predicated upon omissions of material fact which there was a duty to disclose.

## X.    <u>CLASS ACTION ALLEGATIONS</u>

59.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased or otherwise acquired Teva ADS during the Class Period and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of Teva and the directors, officers and employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

60.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class located throughout the United States.  Throughout the Class Period, Teva ADS were actively traded on the NYSE (an open and efficient market) under the symbol "TEVA." Record owners and other members of the Class may be identified from records maintained by Teva and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

61.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

62.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

63.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

(b)     whether Defendants participated in and pursued the common course of conduct complained of herein;

(c)     whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, financial condition and prospects of Teva;

(d)     whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Teva;

(e)     whether the market price of Teva ADS during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

(f)     the extent to which the members of the Class have sustained damages and the proper measure of damages.

64.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

### XI.    COUNTS AGAINST DEFENDANTS UNDER THE EXCHANGE ACT

### COUNT I
### For Violations of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

65.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.  This claim is asserted against all Defendants.

66.    During the Class Period, Teva and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Teva ADS; and (iii) cause Plaintiff and other members of the Class to purchase Teva ADS at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

67.    These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's ADS in an effort to maintain artificially high market prices for Teva ADS in violation of §10(b) of the Exchange Act and Rule 10b-5.  Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.  The Individual Defendants are also sued herein as controlling persons of Teva, as alleged herein.

68.    In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated

disclosure provisions of the SEC as embodied in SEC Regulations S-X (17 C.F.R. § 210.1-01, et seq.) and S-K (17 C.F.R. § 229.10, et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded ADS would be based on truthful, complete and accurate information.

69.     Teva and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of Teva as specified herein.  These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Teva's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Teva and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Teva's ADS during the Class Period.

70.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting

of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

71.   These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Teva's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its ADS.  As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

72.   As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Teva ADS was artificially inflated during the Class Period.  In ignorance of the fact that the market price of Teva shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade,

and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired Teva ADS during the Class Period at artificially inflated high prices and were damaged thereby.

73.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Teva, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Teva ADS during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

74.     By virtue of the foregoing, Teva and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75.     As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's ADS during the Class Period.

<u>**COUNT II**</u>
**For Violations of §20(a) of the Exchange Act**

76.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.  This claim is asserted against all of the Individual Defendants.

77.     The Individual Defendants were and acted as controlling persons of Teva within the meaning of §20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the

power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Each of the Individual Defendants were provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

79.     As set forth above, Teva and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's ADS during the Class Period.

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment as follows:

a)      Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)      Awarding Plaintiff and the other members of the Class damages in an amount which

may be proven at trial, together with interest thereon;

c)      Awarding Plaintiff and the members of the Class pre-judgment and post-judgment

interest, as well as their reasonable attorneys' and expert witness fees and other

costs; and

d)      Awarding such other relief as this Court deems appropriate.

## XIII.  <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: June 21, 2019

Respectfully submitted,

By: _____

David M. Promisloff (ID# 200971)

**PROMISLOFF LAW, P.C.**
5 Great Valley Parkway, Suite 210
Malvern, PA 19355
Tel: (215) 259-5156
Fax: (215) 600-2642
David@prolawpa.com

*Liaison Counsel for Plaintiff*

**SAXENA WHITE P.A.**
Joseph E. White III
Lester R. Hooker
150 East Palmetto Park Road, Suite 600
Boca Raton, FL 33432
Tel: (561) 394-3399
Fax: (561) 394-3382
jwhite@saxenawhite.com
lhooker@saxenawhite.com

David R. Kaplan
12750 High Bluff Drive, Suite 475

26

San Diego, CA 92130
Tel: (858) 997-0860
Fax: (858) 369-0096
dkaplan@saxenawhite.com

*Counsel for Plaintiff Employees' Retirement System
of the City of St. Petersburg, Florida*