# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF ST. PETERSBURG, FLORIDA, individually and on behalf of all others similarly situated, | |
| Plaintiff, | **No. 2:19-cv-02711-PD** |
| v. | **Hon. Paul S. Diamond** |
| TEVA PHARMACEUTICAL INDUSTRIES LTD., KARE SCHULTZ, and MICHAEL McCLELLAN, | |
| Defendants. | |

## **DEFENDANTS' MOTION TO TRANSFER**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ..........................................................................................4

    A.    The *Ontario* Litigation ....................................................4

    B.    The Follow-On Lawsuits..................................................6

    C.    The Present Action ...........................................................9

ARGUMENT ............................................................................................11

  I.  TRANSFER IS APPROPRIATE UNDER THE FIRST-FILED RULE .....12

    A.    The *Ontario* Litigation Is The First-Filed Action. ............13

    B.    The *Ontario* Litigation Encompasses The
           Same Subject Matter As The Present Case. ......................14

    C.    No Exceptional Circumstances Weigh Against Transfer. .................16

  II.  ALTERNATIVELY, TRANSFER IS
      APPROPRIATE UNDER SECTION 1404(A)...........................................19

  III. THIS COURT SHOULD NOT APPOINT
       A LEAD PLAINTIFF BEFORE TRANSFERRING THE CASE..............23

CONCLUSION ..........................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Chavez v. Dole Food Co.*,
    836 F.3d 205 (3d Cir. 2016) ..............................................................................12

*Crosley Corp. v. Hazeltine Corp.*,
    122 F.2d 925 (3d Cir. 1941) ........................................................................12, 13

*EEOC v. Univ. of Pa.*,
    850 F.2d 969 (3d Cir. 1988) .......................................................................16, 17

*Gallagher v. Ocular Therapeutix, Inc.*,
    No. 17-cv-5011, 2017 WL 4882488 (D.N.J. Oct. 27, 2017).......................23, 24

*Goggins v. All. Capital Mgmt., L.P.*,
    279 F. Supp. 2d 228 (S.D.N.Y. 2003) ................................................................21

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) ...................................................................20, 21, 22

*Kershner v. Komatsu Ltd.*,
    305 F. Supp. 3d 605, 608 (E.D. Pa. 2018).....................................................19, 20

*Palagano v. NVIDIA Corp.*,
    No. 15-1248, 2015 WL 5025469 (E.D. Pa. Aug. 19, 2015).............................12

*Panitch v. Quaker Oaks Co.*,
    Civ. No. 16-4586, 2017 WL 1333285 (E.D. Pa. Apr. 5, 2017)...................*passim*

*Villari Brandes & Kline, P.C. v. Plainfield Speciality Holdings II, Inc.*,
    Civ. No. 09-2552, 2009 WL 1845236 (E.D. Pa. June 26, 2009).......................21

*Weber v. Basic Comfort, Inc.*,
    155 F. Supp. 2d 283 (E.D. Pa. 2001).................................................................21

Defendants Teva Pharmaceutical Industries Ltd. ("Teva"), Kåre Schultz, and Michael McClellan (collectively, "Defendants") respectfully submit this Motion to Transfer. Just as this Court recently concluded in materially indistinguishable circumstances in *Grodko v. Teva Pharm. Indus. Ltd.*,[1] and *Phoenix Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*,[2] well-settled legal principles justify transferring this case to the U.S. District Court for the District of Connecticut because that court is currently adjudicating a case that was filed first and contains overlapping parties, claims, and allegations.

## PRELIMINARY STATEMENT

This case is the latest in a series of more than twenty duplicative stock-drop lawsuits filed during the past three years alleging that Teva and its corporate executives misled investors about Teva's financial condition in violation of federal securities law. The original litigation, the *Ontario* litigation,[3] was consolidated in the U.S. District Court for the District of Connecticut, and because it was filed much earlier, is at a far more advanced stage: the District Court granted the Teva Defendants' motion to dismiss the initial consolidated complaint without prejudice

---

[1] Civ. No. 17-cv-03743, ECF No. 37 (E.D. Pa. April 10, 2018) (Diamond, J.) ("*Grodko* Order") (attached as Exhibit A)

[2] Civ. No. 18-cv-03305, ECF No. 38 (E.D. Pa. Feb. 22, 2019) (Diamond, J.) ("*Phoenix* Order") (attached as Exhibit B)

[3] *See Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, No. 17-cv-00558 (D. Conn.), *originally captioned Galmi v. Teva Pharm. Indus. Ltd.*, No. 16-cv-08259 (C.D. Cal.) (filed Nov. 6, 2016); *see also Leone v. Teva Pharm. Indus. Ltd.*, Case No. 16-cv-09545 (C.D. Cal.) (filed Dec. 27, 2016).

on April 3, 2018, and the Teva Defendants' motions to dismiss the second amended complaint have been fully briefed and argued and are awaiting decision. Nevertheless, Plaintiff filed this case nearly three years after the first, and adds nothing significant to the allegations being litigated in that first-filed case. As a result, now *four* other sets of plaintiffs have filed motions jockeying to become the lead plaintiffs in this case—notwithstanding the fact that the *Ontario* litigation went through the lead plaintiff process more than two years ago, 17-cv-558-SRU (ECF No. 124), and includes claims these would-be lead plaintiffs want to litigate.

Like Plaintiffs here, during the last several years, other plaintiffs have filed copycat putative class actions, a derivative action, and direct actions in this District, in the District of Connecticut (where the *Ontario* litigation is pending), and in the Pennsylvania Court of Common Pleas.[4] In every such case in which a transfer motion has been adjudicated—including the *Grodko* and *Phoenix* cases in this Court, the courts have concluded that the cases should be transferred to the District of Connecticut to be heard by the same judge who already has extensive familiarity with the dispute underlying these securities fraud claims through the

---

[4] Only one related case has been filed in a state court, *Fir Tree Value Master Fund, LP, et. al v. Teva Pharm. Indus. Ltd., et. al*, No. 2018-19713 (Pa. Commw. Ct. Aug. 7, 2018). The Teva Defendants' Petition for Dismissal for Forum Non Conveniens is currently pending in the Court of Common Pleas of Montgomery County, Pennsylvania.

DB1/ 106788951

*Ontario* proceedings.[5]  As this Court recently explained in its decisions transferring the *Grodko* and *Phoenix* actions to Connecticut, there are two independent grounds for transfer:  the first filed rule and 28 U.S.C. § 1404(a).  As discussed below, as in *Grodko* and *Phoenix*, both grounds support transfer of this case.

There is no reason for this duplicative litigation to go forward in this Court. The outcome of *Ontario* will largely determine the outcome here, as *Ontario* includes overlapping parties, claims, and allegations with this lawsuit.  The controlling issues in this case will be adjudicated in the *Ontario* litigation. Allowing this case to go forward in this Court—in parallel with (but far behind) the *Ontario* litigation—would simply waste judicial resources and the parties' resources, and would create the risk of inconsistent rulings.  Accordingly, Defendants respectfully request that this Court order the case transferred to the District of Connecticut, just as it previously did in *Phoenix* and *Grodko*.

---

[5] *See Phoenix* Order; *Grodko* Order; *Huellemeier v. Teva Pharm. Indus. Ltd.*, No. 1:17-cv-485, 2017 WL 5523149 (S.D. Ohio Nov. 17, 2017); *see also See Clal Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*, No. 19-cv-00530-PD, ECF No. 26 (E.D. Pa. April 4, 2019); *Mivtachim The Workers Social Ins. Fund Ltd. v. Teva Pharm. Indus. Ltd.*, No. 19-cv-00674-PD, ECF No. 23 (E.D. Pa. April 4, 2019); *Highfields Capital I LP v. Teva Pharm. Indus. Ltd.*, No. 19-cv-00569-PD, ECF. No. 7 (E.D. Pa. April 18, 2019).  In the latter three cases, the parties stipulated to transfer to Connecticut, and this Court approved and adopted the parties' stipulation.  *Clal*, ECF Nos. 25-26; *Mivtachim*, ECF Nos. 22-23; *Highfields*, ECF Nos. 6-7.

DB1/ 106788951

## BACKGROUND

### A.    The *Ontario* Litigation

Nearly three years ago, on November 6, 2016, Amram Galmi filed a class action complaint in the U.S. District Court for the Central District of California against Teva, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). *Galmi v. Teva Pharm. Indus. Ltd.*, No. 16-cv-08259 (C.D. Cal.), ECF No. 1. On December 27, 2016, plaintiff Anthony Leone filed a very similar class action complaint in the same court. *Leone v. Teva Pharm. Indus. Ltd.*, No. 16-cv-09545 (C.D. Cal.), ECF No. 1.

Teva requested that the California district court transfer the *Galmi* and *Leone* actions to the Eastern District of Pennsylvania, where Teva USA, Teva's U.S. subsidiary, is located. *Galmi*, ECF No. 37. The district court consolidated the cases, Order, *Galmi*, ECF No. 74, and agreed to transfer the cases, but it declined to transfer to this District, stating that "the defendant's choice of forum is given little weight," and instead chose the District of Connecticut, where related antitrust litigation was underway and where a non-party witness was located. *Id.* The cases were transferred on April 3, 2017. *Id.*

In Connecticut, the consolidated cases were assigned to Judge Stefan R. Underhill, who agreed that consolidation was proper. *Ontario*, No. 17-cv-00558 (D. Conn.), ECF No. 120. The cases then proceeded through the Private Securities

Litigation Reform Act ("PSLRA") process of appointing lead plaintiff and lead class counsel. *See* 15 U.S.C. § 78u-4(a)(3)(B). On July 11, 2017, after a hearing, Judge Underhill resolved three competing motions for appointment as lead plaintiff in a detailed, 28-page opinion selecting the Ontario Teachers' Pension Plan Board as Lead Plaintiff. *Ontario*, ECF No. 124.

The Lead Plaintiff then filed a consolidated class action complaint that spanned over 300 pages and included 1,087 paragraphs of allegations. *Ontario*, ECF No. 141. The main theme of the allegations was that the defendants misled investors by failing to disclose that Teva's revenues from the sales of its generic drug products were allegedly attributable to unsustainable collusive price-fixing in violation of the antitrust laws. *See id.* ¶ 4. The defendants moved to dismiss the complaint. At the conclusion of the April 3, 2018 argument on Defendants' motions to dismiss, Judge Underhill granted Defendants' motions from the bench, and allowed Lead Plaintiff leave to re-plead. *Ontario*, ECF No. 214. On June 22, 2018, the *Ontario* Lead Plaintiff filed a 422-paragraph Amended Consolidated Class Action Complaint. *Ontario*, ECF No. 226. The Amended Complaint maintained the allegations of collusive price-fixing, and added allegations accusing the defendants of misleading investors by failing to disclose that Teva's generic drug revenues were allegedly attributable to an unsustainable "Price-Hike Strategy." *See id.* ¶ 1. The Teva Defendants filed motions to dismiss the *Ontario*

Amended Complaint, and oral argument was held on March 12, 2019. Those motions currently are pending before the court.

## B.     The Follow-On Lawsuits

After *Ontario*'s lead-plaintiff ruling, additional securities fraud lawsuits against Teva and Teva executives and directors followed. Although numerous of those actions were filed in different forums, with the exception of the one state court case,[6] in which a motion to dismiss on forum non conveniens grounds remains pending, they now are **all** pending in the District of Connecticut before Judge Underhill.

*First*, on July 17, 2017, Robert W. Huellemeier filed a lawsuit purporting to allege derivative claims or, alternatively, asserting claims on behalf of a class of those who purchased Teva stock through its employee stock purchase plan. *Huellemeier v. Teva Pharm. Indus. Ltd.*, No. 17-cv-00485 (S.D. Ohio), ECF No. 1. This complaint's principal allegation was that Teva and its officers made misrepresentations and omissions in violation of Section 11 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k. *Huellemeier* Compl. ¶¶ 109-15. The defendants moved to transfer the *Huellemeier* action to the District of Connecticut under the first-filed rule and 28 U.S.C. § 1404(a) because its allegations duplicated those made in *Ontario*. On November 17, 2017, Judge Susan J. Dlott granted the

---

[6] *See supra* n.4.

DB1/ 106788951

motion to transfer under the first-filed rule. Applying that rule, Judge Dlott held that the case's parties, claims, and allegations were "similar enough to those in the *Ontario Teachers* case to make transfer appropriate." *Huellemeier*, 2017 WL 5523149, at *4-5.

*Second*, on August 3, 2017, OZ ELS Master Fund, Ltd. and several related entities filed a complaint alleging violations of Sections 10(b), 18(a), and 20(a) of the Exchange Act as well as Sections 11, 12(a)(2), and 15 of the Securities Act. *OZ ELS Master Fund, Ltd. v. Teva Pharm. Indus. Ltd.*, No. 17-cv-01314 (D. Conn.), ECF No. 1. That complaint was filed in the District of Connecticut and assigned to Judge Underhill because he was presiding over the *Ontario* litigation. *OZ*, ECF No. 8. The parties agreed to stay the case pending resolution of an anticipated motion to dismiss in *Ontario*. *OZ*, ECF No. 19.

*Third*, on August 21, 2017, Elliot Grodko filed a class action complaint in this District, alleging violations of Sections 10(b) and 20(a) of the Exchange Act as well as a violation of the securities laws of the State of Israel. *Grodko*, ECF No. 1. Then, *fourth*, on August 30, 2017, Barry Baker filed a class action complaint that was substantively identical to the *Grodko* Complaint—except that it omitted the Israeli law claim. *Baker v. Teva Pharm. Indus. Ltd.*, Civ. No. 17-cv-03902, ECF No. 1 (E.D. Pa.). Those cases were consolidated because of their similarity, *Grodko*, ECF No. 16, and the defendants moved to transfer both to the District of

7

Connecticut. On April 10, 2018, this Court granted transfer in a thorough 16-page opinion explaining that Third Circuit precedents independently justified transfer under *both* the first-filed rule and Section 1404(a). *See Grodko* Order.

*Fifth*, on August 3, 2018, Phoenix Insurance Company, Ltd. and several related entities filed a complaint alleging violations of violations of Sections 10(b) and 20(a) of the Exchange Act of 1934 and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. *Phoenix*, ECF No. 1. The defendants moved to transfer *Phoenix* to the District of Connecticut. *Phoenix*, ECF No. 30. On February 22, 2019, this Court granted transfer in a thorough 13-page opinion explaining, like in *Grodko*, that the Third Circuit precedents independently justified transfer under *both* the first-filed rule and Section 1404(a). *See Phoenix* Order.

*Sixth*, *seventh*, and *eighth*, three other lawsuits were filed in this District raising similar securities claims. *Clal Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*, No. 19-cv-00530-PD (E.D. Pa.) (filed Feb. 5, 2019); *Highfields Capital I LP v. Teva Pharm. Indus. Ltd.*, No. 19-cv-00569-PD (E.D. Pa.) (filed Feb. 8, 2019); *Mivtachim The Workers Social Ins. Fund Ltd. v. Teva Pharm. Indus. Ltd.*, No. 19-cv-00674-PD (E.D. Pa.) (filed Feb. 15, 2019). In all three cases, the parties stipulated to transfer to Connecticut, and this Court approved and adopted the parties' stipulation. *Clal*, ECF Nos. 25-26; *Highfields*, ECF Nos. 6-7; *Mivtachim*, ECF Nos. 22-23.

DB1/ 106788951

### C.  The Present Action

After the transfer of *Grodko* and *Phoenix*, and the filing of the *Ontario* Amended Complaint, Plaintiffs filed their Complaint in this action on June 21, 2019.  ECF No. 1 ("*St. Petersburg* Complaint").  Plaintiffs did not designate their case as related to *Phoenix* or any of the other three Teva securities cases that terminated in this District within the past year, but instead marked it as related to MDL litigation.  ECF No. 1-2.  That decision apparently was premised on Plaintiffs' stated position that their case is related to the MDL and Attorneys General litigation pending in this District.  ECF No. 23.  The judge presiding over the MDL litigation, however, disagreed.  Days after Plaintiffs filed their Complaint and notice relating it to the MDL litigation, Judge Rufe *sua sponte* entered an order noting that this action "asserts claims against Defendant Teva and related individuals alleging violations of the securities laws of the United States, and is therefore outside the scope of the MDL[,]" and requiring the clerk to remove the related case designation and refer the case to the Chief Judge for reassignment.  ECF No. 2.

Following random reassignment to the honorable Judge Joshua Wolson, ECF No. 3, Defendants moved to have the case reassigned to this Court based on the relatedness of this action to the *Phoenix*, *Clal*, *Highfields*, and *Mivtachim* cases,

as well as the *Grodko* and *Baker* cases before them.  ECF No. 5.  Judge Wolson

agreed and the case was reassigned to this Court.  ECF No. 6.

Unsurprisingly, in addition to being related to the *Phoenix*, *Clal*, *Highfields*,

*Mivtachim*, and the *Grodko* and *Baker* cases, the *St. Petersburg* Complaint

overlaps with the long-running *Ontario* litigation.  Like *Ontario*, *St. Petersburg* is

a putative securities fraud class action brought by Teva investors based on alleged

misrepresentations and omissions by the company and various officers and

employees.  While Plaintiffs seek to distance themselves from *Ontario* by asserting

a different class period, Plaintiffs' securities fraud claims are based on the same

conduct at issue in *Ontario* – Teva's alleged failure to disclose its engagement in

an alleged scheme to raise the prices of certain generic drugs.  *Compare, e.g.*, *St.

Petersburg* Compl. ¶¶ 2, 9, 29, *with Ontario* Compl., ECF No. 226, ¶¶ 1, 15.  In

*Ontario*, the allegations center on the failure to disclose the alleged antitrust

violations and a so-called "price hike strategy."  *Ontario* Compl. ¶ 15.  Here, the

allegations center on Teva's denial of having engaged in alleged antitrust

violations.  *St. Petersburg* Compl. ¶ 2.  Regardless of how Plaintiffs spin it, the

alleged conduct at issue is the same in both cases, and is the same alleged

underlying conduct at issue in every case that has been before this Court, as well as

the remainder of the cases now pending in Connecticut.  *See, e.g., Phoenix*

Compl. ¶¶ 1-6, 11-21; *Clal* Compl. ¶¶ 1, 5, 7, 16-17; *Highfields* Compl. ¶¶ 1, 3-4, 25; *Mivtachim* Compl. ¶¶ 1, 5, 7, 16-17.

In addition to this factual overlap, the parties and claims in the securities actions overlap, too. Teva Pharmaceutical Industries Ltd. is named as a defendant in *Ontario* and all of the other actions, and Messrs. Schultz and McClellan are named individually in *Clal*, *Mivtachim*, and this case. *Clal* Compl. ¶¶ 38-39; *Mivtachim* Compl. ¶¶ 35-36; *St. Petersburg* Compl. ¶¶ 19-20. Further, Plaintiffs here allege violations of Sections 10(b) and 20(a) of the Exchange Act. *St. Petersburg* Compl. ¶¶ 65-79. The plaintiffs in *Ontario*, and the other plaintiffs in this District, all have alleged violations of the same statutory provisions. *Ontario* Compl. ¶¶ 341-347; *Phoenix* Compl. ¶¶ 771-86; *Clal* Compl. ¶¶ 443-49; *Highfields* Compl. ¶¶ 203-22; *Mivtachim* Compl. ¶¶ 440-46.

## ARGUMENT

Just as this Court recently held in *Phoenix* and *Grodko*, two independent doctrines justify transfer in these circumstances. *Phoenix* Order 3-5; *Grodko* Order 4-6. The long-settled "first-filed" rule "is a comity-based doctrine stating that, when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority." *Chavez v. Dole Food Co.*, 836 F.3d 205, 210 (3d Cir. 2016) (en banc). Separately, 28 U.S.C. § 1404(a) authorizes courts to transfer any action for the convenience of parties and witnesses and the

interest of justice. Both doctrines afford district courts wide discretion to transfer cases where doing so would serve efficiency and equity. *See, e.g., Palagano v. NVIDIA Corp.*, No. 15-1248, 2015 WL 5025469, at *2-3 (E.D. Pa. Aug. 19, 2015). And both doctrines apply here.

As shown below, courts regularly exercise their discretion to transfer actions under each of these rationales where, as here, an overlapping action is filed after a class action is underway. Transfer in such circumstances is appropriate because it avoids: (1) the waste of judicial resources (as well as the resources of parties and witnesses), and (2) the risk of inconsistent rulings. *Phoenix* Order 8, 13; *Grodko* Order 10, 14-15. For these reasons, just as in *Phoenix* and *Grodko*, this Court should transfer this case to the District of Connecticut, the court that has been adjudicating the *Ontario* litigation for more than two years and that has issued several major rulings during that time.

## I. TRANSFER IS APPROPRIATE UNDER THE FIRST-FILED RULE.

The first-filed rule exists because "[t]he economic waste involved in duplicating litigation is obvious"—as is "its adverse effect upon the prompt and efficient administration of justice." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941). Accordingly, "[c]ourts already heavily burdened with litigation . . . should . . . not be called upon to duplicate each other's work." *Id.* Instead, they possess wide discretion to transfer a duplicative second-filed action to

the forum where the first-filed action is pending, and flexibility to do so even when the actions are not "mirror image cases where the parties and the issues perfectly align." *Panitch v. Quaker Oaks Co.*, Civ. No. 16-4586, 2017 WL 1333285, at \*2 (E.D. Pa. Apr. 5, 2017) (Diamond, J.) (citations omitted) (ordering transfer of duplicative class-action under first-filed rule and § 1404(a)); *Phoenix* Order 3-4; *Grodko* Order 4-5.

The present lawsuit overlaps to an enormous extent with that in the *Ontario* litigation, which the parties have been vigorously litigating for more than two years in front of a judge who has become deeply familiar with the case's subject matter. Requiring the parties to litigate the same issues in this Court would require an enormous duplication of effort, precisely the problem that the first-filed rule seeks to avoid. *Phoenix* Order 8; *Grodko* Order 10. Much like the transferred *Phoenix* and *Grodko* cases, this case calls for a textbook application of the first-filed rule, and none of the rare exceptions to the rule applies.

### A.     The *Ontario* Litigation Is The First-Filed Action.

The *Ontario* litigation is a result of the consolidation of the *Galmi* and *Leone* actions, which were respectively commenced on November 6 and December 27, 2016—the first securities lawsuits against Teva and its officers. The Complaint in this case was filed over two and a half years later, on June 21, 2019. As discussed above, the *Galmi* and *Leone* cases were consolidated, underwent the PSLRA lead-

plaintiff appointment process, and have had a full round of motion to dismiss briefing and argument which led to dismissal and to the filing of the *Ontario* Amended Complaint on June 22, 2018 (a year before Plaintiffs here filed their Complaint). There can be no question that *Ontario* is the first-filed action for purposes of the first-filed rule. *See Phoenix* Order 6; *Grodko* Order 7-8.

## B. The *Ontario* Litigation Encompasses The Same Subject Matter As The Present Case.

The first-filed *Ontario* litigation also encompasses the "subject matter" of this lawsuit. *See Phoenix* Order 6-8; *Grodko* Order 8-10. Both actions attempt to impose liability on Teva and its officers and employees for alleged violations of the federal securities laws. Both are putative class actions, and the core legal theory in both cases is that it was misleading for the defendants not to disclose and to deny that Teva's revenues from its generic drug business over the past half-decade supposedly depended on an undisclosed scheme to raise the prices of certain generic drugs. In *Ontario*, the allegations center on the failure to failure to disclose the alleged antitrust violations and an alleged "price hike strategy." *Ontario* Compl. ¶ 15. Here, the allegations center on Teva's denial of having engaged in alleged antitrust violations. *St. Petersburg* Compl. ¶ 2. The alleged underlying conduct is the same—as it is for the remainder of the cases now pending in Connecticut. *See Phoenix* Compl. ¶¶ 1-6, 11-21; *Clal* Compl. ¶¶ 1, 5, 7, 16-17; *Highfields* Compl. ¶¶ 1, 3-4, 25; *Mivtachim* Compl. ¶¶ 1, 5, 7, 16-17. All of

the cases center on whether Teva engaged in alleged antitrust violations, which raised the price of its products, and made actionable misrepresentations and omissions regarding such matters.

The similarities do not end with the two actions' overarching legal theories. They also extend to very specific aspects of the complaints. *See Phoenix* Order 7; *Grodko* Order 9. Teva Pharmaceutical Industries Ltd. is named as a defendant in both actions (and all related actions),[7] and the claims in the two lawsuits also have virtually complete overlap. *See Phoenix* Order 7-8; *Grodko* Order 9-10. Both cases currently involve claims for alleged violations of Sections 10(b) and 20(a) of the Exchange Act. *St. Petersburg* Compl. ¶¶ 65-79; *Ontario* Am. Compl. ¶¶ 341-47.

In short, the legal and factual issues in this case are "substantially identical" to legal and factual issues in *Ontario*, and "the judicial efficiency rationale undergirding the first-filed rule" would be best served through transfer. *Panitch*, 2017 WL 1333285, at *4 (citation omitted). Just as this Court concluded in *Phoenix* and *Grodko*, as the parties stipulated and this Court approved in *Clal*, *Highfields*, and *Mivtachim*, and as the district court concluded in *Huellemeier*, this duplicative litigation against Teva and its officers should be transferred to the

---

[7] The named individual defendants in this case, while not defendants in *Ontario*, are named individually in other actions that have been transferred to the Connecticut court. *Clal* Compl. ¶¶ 38-39; *Mivtachim* Compl. ¶¶ 35-36; *St. Petersburg* Compl. ¶¶ 19-20.

District of Connecticut under the first-filed rule. *Phoenix* Order 8 ("Given this substantial overlap in subject-matter, transfer under the first-filed rule would prevent inconsistent rulings and duplication of judicial effort"); *Grodko* Order 10 ("[G]iven the substantial overlap in subject-matter, transfer under the first-filed rule would prevent inconsistent rulings and duplication of judicial effort."); *Huellemeier*, 2017 WL 5523149, at *5 ("The parties and claims in this case are similar enough to those in the *Ontario Teachers* case to make transfer appropriate.").

### C. No Exceptional Circumstances Weigh Against Transfer.

While there are certain exceptions to the first-filed rule, they are "rare" and do not apply in this case. *Phoenix* Order 8; *Grodko* Order 11; *EEOC v. Univ. of Pa.*, 850 F.2d 969, 976 (3d Cir. 1988). "[I]nvocation of the rule will usually be the norm," and only "exceptional circumstances" justify departing from the rule. *EEOC*, 850 F.2d at 979. Such exceptional circumstances would arise in cases of "[b]ad faith" or "forum shopping," "when the second-filed action ha[s] developed further than the initial suit," or "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable forum." *Id.* at 976; *see also Phoenix* Order 8; *Grodko* Order 11-12.

Nothing like that is present here, and this is not the exceptional case where refusal to transfer would be justified. *Phoenix* Order 8; *Grodko Order* 11.

"Normally, a plaintiff must establish that the defendant in the second action filed the first action to avoid the second forum." *Panitch*, 2017 WL 1333285, at *5 (quoting *Catanese v. Unilever*, 774 F. Supp. 2d 284, 690-91 (D.N.J. 2011)) (ellipses omitted). But here, as in *Panitch*, Teva "filed none of the prior actions" and simply "desire[s] to litigate in one forum all the identical class actions filed against it [which] is entirely understandable." *Id.*

Significantly, Teva did not choose the District of Connecticut as a forum. When Teva was faced with securities litigation in California, it sought transfer to *this District*, not the Connecticut District Court. As explained above, despite Teva's initial request to litigate here in the Eastern District of Pennsylvania, the California district court transferred the *Galmi/Leone* cases to the District of Connecticut on the ground that "the defendant's choice of forum is given little weight." *Galmi*, ECF No. 74 at 4. In making this motion, then, Defendants are not engaged in the type of forum-shopping that would support a rare exception to the first-filed doctrine. *Phoenix* Order 8; *Grodko* Order 11.

Nor is there any argument that this action has developed further than *Ontario*. *Id.* On the contrary, Judge Underhill has already heard oral argument and issued a decision dismissing the first iteration of the *Ontario* Lead Plaintiff's complaint, *Ontario*, ECF No. 218, the Lead Plaintiff filed an Amended Complaint, *Ontario*, ECF No. 226, which the defendants have moved to dismiss, *Ontario* ECF

DB1/ 106788951

Nos. 238, 239, 240, and Judge Underhill has heard argument on. *Ontario* ECF No. 272. Before that, moreover, Judge Underhill heard argument on competing motions to appoint Lead Plaintiff back on April 26, 2017, *Ontario*, ECF No. 119, and issued a 28-page opinion appointing Lead Plaintiff on July 11, 2017, *Ontario*, ECF No. 124.[8] In total, the *Ontario* case has been proceeding steadily for almost three years—in Connecticut before Judge Underhill for most of that time—and there have been 280 filings. That is more than enough progress to support transfer, especially given how much less has happened here. *Phoenix* Order 8; *Grodko* Order 11.

Because *Ontario* was the first-filed case involving the present subject matter and no exception to the first-filed rule applies, this case should be transferred to the District of Connecticut like *Phoenix*, *Clal*, *Highfields*, *Mivtachim*, *Grodko* and *Huellemeier* before it.

## II. ALTERNATIVELY, TRANSFER IS APPROPRIATE UNDER SECTION 1404(A).

Even if transfer were not warranted under the first-filed doctrine—and it is—it would be warranted under 28 U.S.C. § 1404(a). *Grodko* Order 12-15. That

---

[8] The *Ontario* Lead Plaintiff was chosen through a competitive process mandated by the PSLRA as the "most adequate" among three competitors for the position, in part because it was an institutional investor with experience leading class action litigation and had the largest financial interest in the case. *Ontario*, ECF No. 124 at 25-27. The *Ontario* Lead Plaintiff claims to have purchased $58 million of Teva stock and to have lost $23 million. *Id.* at 25.

statute states, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Though "each case must turn on its particular facts" and requires courts to balance multiple factors, the statute's overarching purpose is "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Panitch*, 2017 WL 1333285, at *3 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)).  Permitting these actions to remain in this Court would run counter to Section 1404(a) and its purposes.

"The first step in a court's analysis of a transfer motion is to determine whether venue would be proper in the transferee district."  *Kershner v. Komatsu Ltd.*, 305 F. Supp. 3d 605, 608 (E.D. Pa. 2018) (quoting *Weber v. Basic Comfort, Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001)).  Under the federal securities laws and the venue provision for defendants not resident in the United States, there is no question that these cases could have been brought either here or in the District of Connecticut.  *See* 15 U.S.C. § 78aa(a); 28 U.S.C. § 1391(c)(3).  The only question under Section 1404(a) is whether transfer is appropriate in light of public and private interests identified by the Third Circuit in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

Under *Jumara*, relevant "[p]ublic interests include: the 'enforceability of any judgment; practical considerations that could make the trial easy, expeditious or inexpensive; relative administrative difficulty resulting from court congestion; local interest in deciding the controversy; relative importance of public policies; and, familiarity of the trial judge with the applicable state law in diversity cases.'" *Kershner*, 305 F. Supp. 3d at 611 (citation omitted). In addition, "[p]rivate interests include: 'plaintiff's choice of venue; defendant's preference; where the claim arose; convenience of the witnesses to the extent they might be unavailable for trial in one of the fora; and, the extent to which records or other documentary evidence would be available for production.'" *Id.* (citation omitted); *Grodko* Order 12-15.

The *Jumara* factors readily point toward transfer. *Phoenix* Order 13; *Grodko* Order 15. In fact, "the presence of a related action in the transferee forum"—here, the *Ontario* litigation—"is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of parties and witnesses, would suggest the opposite." *Villari Brandes & Kline, P.C. v. Plainfield Speciality Holdings II, Inc.*, No. 09-cv-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009); *see also Goggins v. All. Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 235 (S.D.N.Y. 2003) ("Concerns over judicial

efficiency outweigh all other factors in this case, and are dispositive of the issue.");
*Phoenix* Order 10; *Grodko* Order 12.

Here, however, the other *Jumara* factors do *not* weigh against, but rather favor transfer. Although the plaintiff's choice of forum is often due significant weight, "where Plaintiff chooses a forum other than her state of residence, her choice is given less weight." *Weber*, 155 F. Supp. 2d at 285. That is the situation here, since Plaintiff is the Employees' Retirement System of the City of St. Petersburg, Florida. "Therefore, Plaintiff's only contact within this jurisdiction appears to be through her attorney's office and as the convenience of the litigating attorneys should not be considered in evaluating transfer of venue, this fact does not weigh in favor of preserving her choice of venue." *Weber*, 155 F. Supp. 2d at 285. But Defendants certainly have a strong preference for litigating these issues in the District of Connecticut. *Phoenix* Order 10; *Grodko* Order 12. It would be extremely expensive for Teva to litigate the same claims in two separate districts, which could "lead to duplication of voluminous discovery and documentary evidence, the burden of which would fall almost entirely on the company" and the individual Defendants. *Panitch*, 2017 WL 1333285, at *7; *Phoenix* Order 11-12; *Grodko* Order 13-14.

Apart from the parties' preferences and convenience, the remaining *Jumara* factors also favor transfer on balance. "The public is obviously well-served by

21

avoiding duplicative litigation," and, indeed, "'a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Panitch*, 2017 WL 1333285, at *7 (quoting *Cont'l Grain*, 364 U.S. at 26); *see also Phoenix* Order 11-13; *Grodko* Order 13-15. Considerations of court congestion cannot possibly favor requiring *two* courts to oversee the progress of these large cases, nor does this federal securities case involving a Florida institutional investor qualify as a "local controversy" that should be decided in Pennsylvania. *Panitch*, 2017 WL 1333285, at *8. In sum, much as this Court concluded in *Phoenix* and *Grodko*, the balance of "private and public *Jumara* factors weigh in favor of transfer under § 1404(a)." *Phoenix* Order 13; *Grodko* Order 15.

## III. THIS COURT SHOULD NOT APPOINT A LEAD PLAINTIFF BEFORE TRANSFERRING THE CASE.

As this Court explained in its order granting the *Grodko* transfer motion, ECF No. 37, "the PSLRA cautions against appointment of a lead plaintiff when consolidation is possible." *Id.* at 15 (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii). As a general rule, questions of lead plaintiff status should be resolved by the transferee court, rather than the transferor court, because the transferee court is the one that will ultimately preside over the action. *See, e.g., Gallagher v. Ocular Therapeutix, Inc.*, No. 17-cv-5011, 2017 WL 4882488, at *2 (D.N.J. Oct. 27, 2017) ("[T]he

selection of a lead plaintiff [is] a decision that is more appropriately made by the court that ultimately will preside over the litigation."). If this Court were to appoint a lead plaintiff here, that could significantly interfere with Judge Underhill's management of the Connecticut action. *See id.* ("[T]he selection of a lead plaintiff may have a significant effect on the conduct of the litigation.").

The PSLRA mandates a process to which a court must adhere in appointing a lead plaintiff in a private securities class action. *See* 15 U.S.C. § 78u-4(a)(3)(B). In the *Ontario* case, Judge Underhill has already implemented that process and issued a 28-page opinion appointing Ontario as lead plaintiff. *Ontario*, ECF No. 124. If St. Petersburg has valid arguments to support its bid to be named lead plaintiffs in the *Ontario* litigation—in the event this case is transferred—those arguments are properly advanced in, and resolved by, the transferee court (which would consider the undoubted opposition of the existing lead plaintiff there).

Like this Court did in the *Grodko* action, it should rule first on Defendants' transfer motion, and should address the lead plaintiff issue only if it denies this motion.

## **CONCLUSION**

For all these reasons, the Court should grant Defendants' motion to transfer this action to the District of Connecticut.

DATED:  September 13, 2019          Respectfully submitted,


/s/  Marc J. Sonnenfeld
Marc J. Sonnenfeld, No. 17210
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA  19103
Tel:   215.963.5000
Fax:   215.963.5001
marc.sonnenfeld@morganlewis.com

Jordan D. Hershman (*pro hac vice*)
Jason D. Frank (*pro hac vice* forthcoming)
Emily Renshaw (*pro hac vice* forthcoming)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA  02110
Tel:   617.951.8000
Fax:   617.951.8736
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com
emily.renshaw@morganlewis.com

*Counsel for Defendants*

DB1/ 106788951

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of September, 2019, a true and correct copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Transfer was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/  Marc J. Sonnenfeld*
Marc J. Sonnenfeld

DB1/ 106788951